**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 1:18-CV-00107-HBB**

**SONYA L. SCOTT**                                                                                 **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security**                                                    **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Sonya L. Scott ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 17) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), to the Commissioner for further proceedings.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered November 15, 2018 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on May 2, 2016 (Tr. 21, 251-52, 253-56, 259-65). Plaintiff alleged that she became disabled on December 31, 2012, as a result of herniated and bulging discs, fibromyalgia and mental impairments (Tr. 21, 289). On August 23, 2017, Administrative Law Judge William C. Zuber ("ALJ") conducted a video hearing from Louisville, Kentucky (Tr. 21, 37-71). Plaintiff and her counsel, A. Thomas Davis, participated from Bowling Green, Kentucky (<u>Id.</u>). Gail H. Franklin, an impartial vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated February 13, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 21-30). The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 (Tr. 23). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2012, the alleged onset date (<u>Id.</u>). At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine and morbid obesity (Tr. 23). The ALJ also determined that Plaintiff's purported fibromyalgia and depression are non-severe impairments (Tr. 24).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (<u>Id.</u>). Additionally, the ALJ specifically concluded that Plaintiff did not meet Listing 1.04 because imaging of her cervical and lumbar spine had not shown any nerve root compromise or nerve root compression (<u>Id.</u>).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except the claimant must be afforded a sit/stand option allowing her to sit for 10-15 minutes every two hours; she can do no more than occasional climbing of ramps and stairs, stooping, and crouching; she is unable to crawl, kneel, or climb ladders, ropes, or scaffolds; she can perform no more than occasional overhead reaching; she can perform no more than frequent use of the hands for feeling, fingering, grasping, or handling; she can perform no more than occasional use of the lower left extremity for foot controls; and no more than occasional exposure to extreme cold, vibration, and dangerous machinery, or unprotected heights (Tr. 24). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 28-29). The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 31, 2012, through the date of the decision (Tr. 29).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 240-43). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than twelve (12)
> months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the RFC to return to his or her past relevant work?

5)   Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. Plaintiff challenges Finding Nos. 3, 4, 5, 10, and 11 that address the second, third, fourth, and fifth steps in the sequential evaluation process (DN 17 PageID # 869-76).

5

Plaintiff's Challenge to Finding No. 3

Plaintiff argues when the ALJ assessed whether her impairments are severe he failed to consider her bilateral knee osteoarthritis and he did not properly evaluate her fibromyalgia (DN 17 Page ID # 869-70). Plaintiff contends the above errors are not harmless because the ALJ's RFC assessment failed to address whether her bilateral knee osteoarthritis and fibromyalgia would impose limitations on her ability to stand, walk, and sit (DN 17 PageID # 869-70). Plaintiff believes that these additional limitations in the RFC assessment would have impacted the number of jobs that she can perform (Id.).

Defendant contends that Plaintiff failed to identify her bilateral knee osteoarthritis prior to and during the hearing (DN 18 PageID # 883-88). Further, the medical evidence does not support a finding that Plaintiff's bilateral knee osteoarthritis and fibromyalgia are severe impairments within the meaning of the regulations (DN 18 PageID # 883-88). Defendant also asserts the ALJ's purported error is harmless because, after determining some of Plaintiff's impairments are severe, the ALJ considered all her impairments in the remaining steps of the disability determination (DN 18 PageID # 883-88 Maziarz v. Sec'y of Health & Servs., 837 F.2d 240, 244 (6th Cir. 1987)).

At the second step, the claimant shoulders the burden of demonstrating she has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy this burden, the claimant must show she suffers from a "medically determinable" physical or mental condition that satisfies the duration requirement and

"significantly limits" her ability to do one or more basic work activities.   20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

According to the regulations, upon determining that a claimant has at least one severe impairment, the Administrative Law Judge must continue with the remaining steps in the disability evaluation outlined above.   20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). So long as an Administrative Law Judge finds that other impairments are severe, continues with the sequential evaluation process, and considers all the impairments in the remaining steps, the Administrative Law Judge's failure to find that a specific impairment or impairments are "severe" is harmless.   Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Mish v. Comm'r of Soc. Sec., No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

Here, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine and morbid obesity (Tr. 23).   As mentioned above, Plaintiff contends the failure to find that her bilateral knee osteoarthritis and fibromyalgia are severe impairments was not harmless because the ALJ failed to consider these impairments in the remaining steps of the sequential evaluation process.

1. Plaintiff's Bilateral Knee Condition

Dr. Pasupuleti provided long term pain management of Plaintiff's neck and low back (*see e.g.* Tr. 673). As a result, the primary focus of the doctor's multiple page treatment notes is management of Plaintiff's neck and low back pain. Beginning on May 5, 2016 and continuing through August 2017, Dr. Pasupuleti's treatment notes also include brief comments about Plaintiff's bilateral knee condition. For example, while receiving pain management care for her neck and low back on May 5, 2016, Plaintiff first complained to Dr. Pasupuleti about bilateral knee pain (Tr. 673). At the time, she rated her pain at an 8 on a scale of 0 to 10 (Id.). Dr. Pasupuleti's examination revealed minimal swelling and tenderness with pain in flexion/weight-bearing with no instability (Tr. 675). The doctor prescribed PENNSAID gel for pain and ordered x-rays of both knees (Tr. 675-76). Dr. Pasupuleti's assessment was bilateral knee pain (Tr. 675).

The treatment note addressing Plaintiff's pain management care on July 8, 2016, also briefly discusses her bilateral knee condition. Dr. Pasupuleti indicated x-rays of Plaintiff's knees, taken on May 9, 2016, showed "mild" degenerative arthritic changes in Plaintiff's right knee; and proximal fibular Osteochondroma and mild degenerative changes in her left knee (Tr. 614-15, 670). An examination of Plaintiff's knees revealed minimal swelling and tenderness with pain in flexion/weight-bearing with no instability (Tr. 670). Notably, Plaintiff rated her bilateral knee pain at a 3 and indicated that PENNSAID gel helped her knee pain (Id.). Dr. Pasupuleti changed his assessment of the condition to bilateral knee pain-osteoarthritis (Id.).

Although Dr. Pasupuleti's treatment notes primarily addressed management of Plaintiff's neck and low back pain on September 8, 2016, November 11, 2016, January 17, 2017, March 25, 2017, May 30, 2017, and August 3, 2017, they also briefly addressed Plaintiff's complaints about

8

bilateral knee pain (Tr. 665, 767, 770, 772, 727, 777, 782, 787). Examinations on those dates revealed minimal swelling and tenderness with pain in flexion and weight-bearing with no instability (Id.). Except for August 3, 2017, Plaintiff rated her bilateral knee pain at a 3 and indicated the PENNSAID gel helped her knee pain (Tr. 664, 666, 727, 765, 768, 770, 773, 776, 778, 781, 783). On August 3, 2017, Plaintiff rated her knee pain at 5 but indicated the PENNSAID gel helped with her knee pain (Tr. 785, 786, 788). Dr. Pasupuleti's treatment notes also indicate Plaintiff rebuffed his efforts to refer her to an orthopedic surgeon, Dr. Badarudeen, for treatment of the bilateral knee condition (*see e.g.*, Tr. 668, 663, 725).

After May 5, 2016, Plaintiff or her attorney filled out and filed out seven different reports related to her applications for benefits (three Disability Reports, two Pain Questionnaires, and two Function Reports), all of which were silent regarding her bilateral knee condition (Tr. 288-94, 307-311, 312-20, 321-29, 340-48, 349-57, 358-64, 365-72). Notably, in the Disability Reports dated November 10, 2016 and March 28, 2017, Plaintiff's counsel did not mention the bilateral knee condition despite being specifically asked to identify any new physical or mental conditions (Tr. 341, 366). Additionally, when Dr. Edgar A. Lopez-Suescum conducted a consultative physical examination on August 20, 2016, Plaintiff did not mention that she suffered from bilateral knee osteoarthritis or knee pain (Tr. 637-39).

Plaintiff's testimony during the administrative hearing on August 23, 2017, makes no mention of her bilateral knee condition (Tr. 42-71). Remarkably, the ALJ expressly asked and Plaintiff confirmed other than her spine issues and fibromyalgia she had no physical impairments that imposed any limitations on her ability to function (Tr. 52). Further, during the hearing,

Plaintiff's own counsel did not mention the bilateral knee condition when he discussed the medical evidence with the ALJ or when he examined Plaintiff and the vocational expert (Tr. 39-40, 52, 63-65, 69-71).

The administrative record shows that Plaintiff did not notify the ALJ about her bilateral knee condition or allege any limitation in function because of the condition. Under Plaintiff's reasoning, the brief comments about the condition in Dr. Pasupuleti's treatment notes would be enough to automatically raise an argument before the ALJ that she is limited by that condition. Such reasoning is inconsistent with Plaintiff's burden to demonstrate that she was disabled by affirmatively setting forth the reasons. *See* 20 C.F.R. §§ 404.1512(a) and 416.912(a) ("In general, you have to prove to us that you are blind or disabled."); Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) ("Claimant bears the burden of proving [her] entitlement to benefits."). More importantly, the first time Plaintiff has affirmatively raised the issue is before this Court in her Fact and Law Summary (*see* DN 17 PageID # 869-70). Cases from other circuits and a district court within this circuit have held that a failure to raise an issue with the Administrative Law Judge results in a waiver of the claim on appeal. *See* Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003) ("[Claimant] never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing. Accordingly, this claim was waived from being raised on appeal."); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We now hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); Motin v. Comm'r Soc. Sec., No. 09-13354, 2010 WL 1754821, at *3 (E.D. Mich. April 30, 2010) (claimant waived her literacy argument because it had not been affirmatively raised before the

Administrative Law Judge).   Considering the circumstances and the persuasive reasoning of these cases, the Court concludes that Plaintiff has waived her claim regarding the bilateral knee condition.

    2.  Plaintiff's Fibromyalgia

An Administrative Law Judge will determine that a claimant's fibromyalgia is a medically determinable impairment if the physician diagnoses fibromyalgia and provides the evidence described in SSR 12-2p section II.A. or section II.B., and the physician's diagnosis is not inconsistent with other evidence in the claimant's case record.   SSR 12-2p, 2012 WL 3104869, at*2 (July 25, 2012).   The two sections provide criteria for diagnosing fibromyalgia, which are generally based on the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia (section II.A.), and the 2010 ACR Preliminary Diagnostic Criteria (section II.B.).   Id.

    Under section II.A., a claimant may be found to have a medically determinable impairment of fibromyalgia if he or she has all three of the following: 1. A history of widespread pain in all quadrants of the body that may fluctuate in intensity and may not always be present; 2. At least 11 of 18 positive tender points bilaterally and above and below the waist on physical examination; and 3. Evidence that other disorders that could cause the symptoms or signs were excluded.   Id.

    Under section II.B., A claimant may be found to have a medically determinable impairment of fibromyalgia if he or she has all three of the following: "1. A history of widespread pain (see section II.A.1.); 2. Repeated manifestations of six or more [Fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking on refreshed, depression, anxiety disorder, or irritable bowel syndrome; and 3.

11

Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.)." Id.

In pertinent part the ALJ's decision reads:

> The claimant has complained of full body aches and pains, which led her treating physician to diagnosis her with fibromyalgia. However, there were no tender point examinations to confirm the diagnosis, nor did the claimant seek any specialized treatment for this condition through a rheumatologist. Overall, the diagnosis was based on the claimant's subjective complaints. Therefore, this condition has not been shown to cause her to have significant limitations in her abilities to perform basic work activities. (Exh 12F)

(Tr. 24). Plaintiff challenges this assessment by arguing "Dr. Carter showed examination findings which note the Plaintiff, '[d]efinitely has point tenderness'" (*see* Tr. 628). Additionally, asserts Plaintiff, Dr. Carter "further stated '[s]he has also fibromyalgia which is making this worse'" (*see* Tr. 628). Remarkably, there are nearly 400 pages of medical evidence in the administrative record and Plaintiff relies on only two rather cryptic remarks from a single treatment note.

Exhibit 12F contains 14 office notes prepared by Dr. Carter (Tr. 622-35). They discuss office visits from January 4, 2013 through May 12, 2016 and address several issues (Id.). Only seven mention a diagnosis and/or history of fibromyalgia (Tr. 628, 629, 630, 632, 633, 634, 635). The single treatment note, from which Plaintiff provides the two remarks, in full reads:

> Sonya Scott 3-28-14   c/o back and neck pain. Has a history of DDD of C spine and T spine.
> Physical Findings: afebrile. BP 120/80. Definitely has point tenderness. She has also [sic] fibromyalgia which is making this worse. A/O. Never did see anybody for this neoplasm.

> Diagnosis:
> 1) Neck and back pain
> 2) Fibromyalgia
> Plan: 1) Zanaflex 4mg bid PRN, mostly at night 2) Refill Neurontin
> at 300mg bid 3) Set up for P.T.   WMC/slm

(Tr. 628).   While the physical findings section mentions point tenderness, there is no indication regarding the scope of Dr. Carter's examination.   The comment may refer to her having tenderness to palpation of the cervical/thoracic spine and the group of muscles on both sides as noted by other doctors (*see e.g.*, Tr. 664-65, 669-70, 674-75, 679-80, 684-85, 689-90, 694).   This seems most likely given Plaintiff's complaint about neck and back pain and Dr. Carter's comment indicating she also has "fibromyalgia which is making this worse" (Tr. 628).   Regardless, the treatment note does not expressly indicate Dr. Carter found at least 11 of 18 positive tender points bilaterally and above and below Plaintiff's waist.   As a result, the treatment note fails to satisfy the tender point requirement in SSR 12-p.   Since the other six office notes merely mention a diagnosis and/or history of fibromyalgia, they do not satisfy Plaintiff's burden of demonstrating her condition is a medically determinable impairment (Tr. 628, 629, 630, 632, 633, 634, 635). *See* SSR 12-2p, 2012 WL 3104869, at*2.   Further, Plaintiff has not identified, nor has the Court found, another document in the medical record that satisfies the tender point requirement in SSR 12-p.   For this reason, substantial evidence supports the ALJ's finding there are no tender point examinations in the record to confirm the diagnosis of fibromyalgia.

Plaintiff's Challenge to Finding No. 4

Plaintiff contends that the ALJ's step three finding is not supported by substantial evidence and does not comport with applicable law (DN 17 PageID # 871-73 citing Tr. 24). Defendant asserts that the ALJ's determination is supported by substantial evidence in the record and does not comport with applicable law (DN 18 PageID # 888-92).

At the third step, a claimant has the burden of demonstrating she has an impairment that meets or medically equals a listing in Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); Burgess v. Sec'y of Health & Human Servs., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the Administrative Law Judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment(s) medically equal a listed impairment. *See* 20 C.F.R. §§ 404.1526(a) and (b), 416.926(a) and (b); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

The relevant portion of the listing reads as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,

motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
. . .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A.

At step two, the ALJ found, in relevant part, that Plaintiff has the severe impairment of degenerative disc disease of the lumbar and cervical spine (Tr. 23). Thus, there is no dispute that Plaintiff showed she suffered from a "disorder of the spine." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04. Then, at step three, with respect to this impairment, the ALJ said only:

> The severity of the claimant's impairment does not meet listing 1.04,
> . . . The claimant has undergone imaging of the cervical and lumbar
> spine. These images have not shown any nerve root compromise
> or nerve root compression. (Section F)

(Tr. 24) (emphasis added). Plaintiff asserts, and the undersigned agrees, the ALJ's assessment is deficient because it fails to address whether there is evidence of spinal cord compromise.

Plaintiff also asserts the ALJ's assessment is deficient because he cited the entire medical record (Section F) instead of specifically citing the imaging being referenced. Plaintiff reasons, without reference to the reports being considered, the ALJ's conclusion cannot be meaningfully reviewed. Further, Plaintiff contends the MRIs in the record show her degenerative disc disease results in compromise of a nerve root and the spinal cord.

As previously mentioned, the administrative record includes nearly 400 pages of medical evidence. The Court has reviewed the medical evidence and found information about a lumbar spine MRI performed on September 18, 2009, a cervical spine MRI performed on December 9, 2009, a lumbar spine MRI performed on June 16, 2011, and MRIs of Plaintiff's cervical and

lumbar spine performed on May 26, 2015. Thus, there is information regarding five MRIs the ALJ could have considered in making his finding that the images of Plaintiff's cervical and lumbar spine have not shown any nerve root compromise or nerve root compression. Yet the ALJ's assessment merely cites Section F, which is the entire medical record, instead of specifically citing the imaging he considered in reaching his conclusion.

The September 2009 lumbar MRI shows a broad central disc herniation at L5-S1 giving slight impingement on the nerve roots and at T11-T12 there is a right-sided disc bulge giving the appearance of mild impingement on the thoracic cord (Tr. 473). The radiology report regarding the December 2009 MRI of Plaintiff's cervical spine is not in the administrative record. But, in a treatment note dated April 28, 2015, Dr. Pasupuleti indicates the MRI revealed "posterior subligamentous herniation of the disc at C5-C6 extending inferiorly with moderate spinal canal stenosis at this level" and "[m]ild bulging at C6-C7 causing only mild spinal stenosis" (Tr. 712-13).

The radiology report discussing the June 2011 lumbar MRI shows a stable posterior and right posterior disc protrusion at T12-L1 that is impinging on but not compressing the thoracic cord at this level (Tr. 477). It also indicates "a new finding of a left posterior disc protrusion at the L2-L3 level producing extrinsic compression of anterolateral margin of the dural sac on the left and extending into the medial aspect of the left L2-L3 neural canal" (Tr. 477). It further indicates a "[b]road-based posterior and left posterior disc protrusion at the L4-L5 level with mild compression of the dural sac anterolaterally" (Tr. 477). Additionally, the report indicates Plaintiff has a "[b]road-based posterior disc protrusion unchanged at the L5-S1 level impinging on the dural sac and S1 nerve roots" (Tr. 477-78).

16

The radiology report addressing the May 2015 lumbar MRI indicates at the T11-T12 level there is a minimal broad-based disc bulge that "produces minimal canal stenosis and no foraminal narrowing" (Tr. 616). It also indicates at the L2-L3 level the left paracentral/neuroforaminal disc protrusion is smaller than on previous examination and results in minimal to mild canal stenosis at this level and mild left foraminal narrowing (Id.). The disc protrusion at L2-L3 also "contacts but does not definitely impinge upon left-sided nerve roots" (Id.). The radiology report indicates at the L3-L4 level a "broad-based disc bulge that is eccentric to the left combines with ligamentum flavum hypertrophy and facet arthropathy producing mild canal stenosis and moderate left and mild right foraminal narrowing" (Id.). At the L4-L5 level, the report indicates "broad-based disc bulge combines with ligamentum flavum hypertrophy and facet arthropathy producing moderate canal stenosis and mild to moderate right greater than left foraminal narrowing" (Id.). The radiology report also indicates at L5-S1 there is a "broad-based disc bulge with a small superimposed right paracentral disc protrusion is again present. This produces mild canal stenosis and very mild bilateral foraminal narrowing" (Id.).

The radiology report addressing the May 2015 cervical MRI is not in the record. However, in a treatment note dated May 28, 2015, Dr. Pasupuleti indicates that it shows "Cervical DDD with disc bulges and mild to mod canal stenosis at C5-6, C6-7" (Tr. 705).

Defendant makes a bare assertion the 2009 and 2011 MRIs "are not relevant, because Plaintiff did not allege her disability began until December 31, 2012, and so the ALJ was not required to discuss them" (DN 18 PageID # 889). To the contrary, medical evidence that predates the alleged onset date is not inherently irrelevant. *See* Melius v. Colvin, No. 15-10820, 2016 WL 633953, at * 4 (E.D. Mich. Feb. 9, 2016). Especially in circumstances such as here where there

were no MRIs performed in 2012 and the MRIs performed in 2009 and 2011 provide objective medical evidence pertaining to Plaintiff's degenerative disc disease and addressing whether she was disabled by her alleged onset date. *See* <u>Kiser v. Colvin</u>, No. 3:12-519, 2013 WL 5488525, at *11 (E.D. Tenn. Oct. 2, 2013) (medical records addressing injuries sustained prior to the alleged onset date were relevant because the claimant's alleged disability arose from those injuries). Defendant also points out that the ALJ discussed Plaintiff's 2015 MRIs when making the RFC assessment (<u>Id.</u> PageID # 890 citing Tr. 26, 616-17, 705). While the 2015 MRIs are relevant to Plaintiff's condition, they do not address whether she was disabled by her alleged onset date. Thus, all the MRIs are relevant to assessing Plaintiff's degenerative disc disease from the alleged onset of disability through the date of the decision.

Defendant also contends that none of the MRIs show the nerve root compromise required by the preamble of Listing 1.04. Again, the preamble indicates "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04. Defendant overlooks mention in the September 2009 and June 2011 lumbar MRI reports of impingement of nerve roots at the L5-S1 level and the thoracic cord at T12-L1 (Tr. 473, 477-78). There are also references in the May 2015 lumbar MRI reports to moderate left foraminal narrowing at L3-L4 and moderate canal stenosis at L4-L5 (Tr. 616). Additionally, Defendant overlooks mention in the record that the December 2009 and May 2015 cervical MRIs revealed a disc herniation or bulge at C5-C6 causing moderate spinal canal stenosis (Tr. 705, 712-13). Thus, contrary to the ALJ's conclusory finding, the MRIs in the record suggest that Plaintiff's

degenerative disc disease results in "compromise of a nerve root (including the cauda equina) or the spinal cord" during some or all the period addressed by the ALJ's decision. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04.

Plaintiff also contends there is substantial evidence in the record showing she satisfies the A criteria for the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04. Plaintiff identifies multiple occasions on which she has been diagnosed with lumbar[1] and cervical[2] radiculopathy; and physical examination findings have shown decreased motion of the neck[3] and low back[4], findings of muscle weakness[5], sensation loss[6], diminished reflexes[7], and positive straight leg raising[8]. The ALJ did not address this question.

The ALJ's errors were not harmless. The regulations indicate if a claimant is found to meet a listed impairment, they are disabled within the meaning of the regulations and are entitled to benefits and no more analysis is necessary. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir. 2011). Therefore, if the ALJ had properly analyzed step three, and had found Plaintiff met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at steps four and five. *See* Reynolds, 424 F. App'x at 416. Additionally, in this case, correction of the above

---

1 Tr. 400, 561, 581, 592, 638, 713, 771, 550, 568, 578.
2 Tr. 399, 638, 665, 700, 713.
3 Tr. 409, 419, 544, 560, 568, 578, 582, 599, 674, 679, 684, 689, 694, 699, 704, 712, 726, 771.
4 Tr. 560, 568, 578, 580, 591, 602, 641, 670, 675, 680, 685, 690, 694, 699, 704, 712, 727, 748, 771.
5 Tr. 419, 544, 580, 582, 591, 599, 602, 638.
6 Tr. 581, 583, 591, 599, 602, 748, 544.
7 Tr. 400.
8 Tr. 400, 549, 560, 568, 578, 581, 583, 592, 600, 603, 605, 670, 674, 679, 684, 694, 699, 704, 712, 772.

19

identified errors is not merely a formalistic matter of procedure, for it is possible that the evidence Plaintiff put forth could meet this listing.

In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Id. Without it, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence. Because the Court has no way to review the ALJ's hopelessly inadequate step three ruling, the Court will reverse and remand the case for a discussion of the evidence and an explanation of reasoning addressing whether Plaintiff's severe impairments meet or medically equal a listed impairment. Id. (citation omitted).

Plaintiff also challenges Finding No. 5 by arguing the ALJ's assignment of weight to Dr. Carter's opinion is not supported by substantial evidence in the record (DN 17 PageID # 873-76). Additionally, Plaintiff challenges Finding Nos. 10 and 11 (Id. PageID # 876). The Court declines to address these challenges as there is already a sufficient basis for reversing the final decision of the Commissioner and remanding the case for further proceedings.

Considering the above conclusions, the final decision of the Commissioner will be reversed, and this matter will be remanded, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration of whether Plaintiff meets or medically equals Listing 1.04. See Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994) (sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand).

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **REVERSED**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. §

405(g), to the Commissioner for further proceedings.


June 14, 2019

**H. Brent Brennenstuhl**
**United States Magistrate Judge**


Copies:        Counsel